# NO. 12-13-00378-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *BERNIE RAY LUCAS,*<br>*APPELLANT* | § | *APPEAL FROM THE 2ND* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *CHEROKEE COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Bernie Ray Lucas appeals his conviction for murder. He raises one issue relating to the trial court's failure to include a sudden passion instruction in the jury charge. We affirm.

### BACKGROUND

A Cherokee County grand jury indicted Appellant for the murder of Shelia Gail Cobb, alleged to have occurred on or about October 13, 2007. Appellant pleaded "not guilty," and a jury trial was held. The jury found Appellant "guilty" and assessed his punishment at fifty years of imprisonment. This appeal followed.

### SUDDEN PASSION

In his sole issue, Appellant argues that the trial court erred by failing to "submit the issue of sudden passion" to the jury in its charge on punishment, resulting in egregious harm. The State contends that the evidence did not raise the issue of sudden passion.

**Standard of Review and Applicable Law**

When an appellant argues that the trial court erred by not granting his request to charge the jury on sudden passion, we first determine whether the complained of error exists. ***Wooten v.***

*State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013). If error exists, we then determine whether the error was harmful. *See id.*

In a murder trial, a defendant may raise the issue of whether he caused the victim's death under the immediate influence of sudden passion arising from an adequate cause. *See* TEX. PENAL CODE ANN. § 19.02(d) (West 2011). "Sudden passion" is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). The mere fact that a defendant acts in response to the provocation of another is not sufficient to warrant a charge on sudden passion. *Trevino v. State*, 100 S.W.3d 232, 241 (Tex. Crim. App. 2003).

"Adequate cause" is cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. TEX. PENAL CODE ANN. § 19.02(a)(1). Adequate cause is not determined by considering the defendant's peculiar conditions, such as low mentality or unstable emotions. *See Gonzales v. State*, 689 S.W.2d 900, 904 (Tex. Crim. App. 1985).[1] Instead, adequate cause is determined by applying the "person of ordinary temper" standard, which is the same as the reasonable person standard. *See id.* at 903. This approach is used to avoid differing applications of the law. *See id.*

**The Evidence**

It is undisputed that Appellant shot and killed Sheila Cobb. However, Appellant contends the evidence raised the question of whether Cobb's killing was the result of sudden passion. To support this contention, Appellant presented evidence from several witnesses who testified about his relationship with Cobb, his mental health, his childhood, his wife's recent

---

[1] Sudden passion was originally an element of the crime of voluntary manslaughter. *See* Act of May 23, 1973, 63rd Leg., R.S., ch. 399, § 1, 1973 Tex. Gen. Laws 883, 913 *amended by* Act of June 14, 1973, 63rd Leg., R.S., ch. 426, § 1, 1973 Tex. Gen. Laws 1122, 1124, *repealed by* Act of June 19, 1993, 73rd Leg., R.S., ch. 900, § 1.01, 1993 Tex. Gen. Laws 3586, 3613-14. In 1993, the legislature eliminated voluntary manslaughter as a category of homicide, and amended Section 19.02 to reduce the punishment range for murder upon proof of "sudden passion arising from an adequate cause." *See id.* The amendment to Section 19.02 included the same definitions for sudden passion and adequate cause that were used in the former penal code provision relating to voluntary manslaughter. *See id.* Accordingly, we apply voluntary manslaughter precedents to our interpretation of sudden passion and adequate cause under Section 19.02. *See Miller v. State*, 33 S.W.3d 257, 260 (Tex. Crim. App. 2000) ("When the Legislature meets, after a particular statute has been judicially construed, without changing that statute, we presume the [L]egislature intended the same construction should continue to be applied to that statute.").

death, his addiction to alcohol, and his intoxication by alcohol and cocaine at the time of the offense.

According to the record, Jacksonville police officers arrived at Appellant's residence on October 13, 2007, after receiving reports of a "demented person." Appellant's daughter, Nancy Apilado, testified that before the police were notified, Appellant called and told her that he shot his girlfriend. She testified that Appellant was "irate and upset," and said he shot Cobb because "she wouldn't have sex with him, and he said my mom told him to do it."[2]

Apilado was outside Appellant's home when the police arrived, but Appellant refused to exit the residence. According to Patrol Sergeant Jesse Mayberry, Appellant admitted killing Cobb, did not want to be arrested, and said he needed "help" and that "he would come out but . . . wanted to drink a few more beers." Assistant Chief of Police John Page testified that while he was trying to convince Appellant to exit his residence, Appellant kept saying "she . . . did me wrong," and "she did me wrong and I don't want to have to go to jail because of what she did." Approximately two hours after they arrived, Appellant opened the door to his residence and the officers arrested him. During the arrest, Sergeant Mayberry removed a .38 revolver from Appellant's back pocket.

When the officers entered Appellant's residence, they found Cobb's body lying on Appellant's bedroom floor. She was nude, except for a pair of socks, and appeared to have been shot five times. Her clothing was "neatly folded" on top of Appellant's dresser.

The record further reflects that on the morning of Cobb's death, Appellant had been drinking alcohol and smoked crack cocaine. Appellant's sister, Judy McGee, testified that Appellant "was always slow academically," had a traumatic childhood, and was an alcoholic.[3] She testified that Appellant went to rehab for his alcoholism, and has never been hospitalized for a mental illness.

Dr. Jill Pontius testified that in April 2007, she diagnosed Appellant with "Bi[p]olar Disorder Type Two, Depressed with Psychotic Features and Bereavement." She related that Appellant had a history of elevated energy, impulsivity, decreased need for sleep, and depression. Additionally, Dr. Pontius testified that Appellant had feelings of hopelessness and

---

[2] At the time of the shooting, Apilado's mother (Appellant's wife) was deceased.

[3] McGee testified that their father committed suicide when Appellant was eight years old.

guilt surrounding the circumstances of his wife's death because he made the decision to take her off life support. Since then, Appellant reported hearing his wife's voice in his house. Dr. Pontius stated that she prescribed medication for Appellant that seemed to be working, although he had reported "fleeting short lived thoughts of suicide by the police."

Dr. David Self, a psychiatrist called to testify on behalf of the defense, opined that Appellant did not meet the legal definition for insanity at the time he shot and killed Cobb.[4] He explained that at the time of the shooting, Appellant was actively suffering from bipolar disorder with elements of psychosis that involved hallucinations. Dr. Self also testified that Appellant suffers from a personality disorder that contributed to a distorted view of his relationship with Cobb. According to Dr. Self, Cobb and Appellant's relationship was one of prostitute-client, but Appellant viewed it as a romantic love affair.

Dr. Self recounted that although Appellant did not have a high level of self-esteem, Appellant told him that when he was with Cobb, she would do and say things that made him feel "better than he had ever felt in his life." But because of Appellant's personality disorder, Dr. Self explained, Appellant could feel extremely threatened by potential rejection or abandonment. Specifically, Dr. Self testified that it would be much more emotionally provocative for Appellant "than it would be for an ordinary man to think that a woman he had a prostitution relationship with might be terminating a relationship."

Dr. Self further testified that Appellant's personality, childhood experience, and the way he was in the world made him more susceptible to being taken advantage of, and that Appellant's view of his relationship with Cobb was "far more important than it should have been in anybody's mind under the circumstances." He explained that Appellant's general mental state, when viewed in light of the fact that he was intoxicated by cocaine and likely alcohol, showed that "[h]is ability to perceive a circumstance correctly, to reason his way through it, to form a plan and execute it[,] was severely impaired." Dr. Self believed that "without this confluence of factors that produced [Appellant's] deranged mental state[,] this offense would not have occurred on this given date."

---

[4] Under the penal code, it is an affirmative defense to prosecution that, "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (West 2011).

4

**Discussion**

The record indicates that Appellant was mentally ill, intoxicated, and hallucinating when he killed Cobb, but these factors are not applicable in determining adequate cause. *See Gonzales*, 689 S.W.2d at 904. Apilado's testimony shows that Appellant's killing of Cobb was provoked by Cobb's refusal to have sexual intercourse with him. *See* TEX. PENAL CODE ANN. § 19.02(a)(2). The mere fact that Appellant killed Cobb in response to this rejection is insufficient to prove adequate cause upon provocation. *See id.* § 19.02(d); *Trevino*, 100 S.W.3d at 241. A woman's rebuffs of a man's sexual advances do not provide adequate cause for her murder, because such rejection would not "commonly produce a degree of anger, range, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *See* TEX. PENAL CODE ANN. § 19.02(a)(1).

The record does not support a sudden passion instruction because Appellant's killing of Cobb did not arise from an adequate cause. *See id.* § 19.02(d). The trial court did not err by denying Appellant's request. Accordingly, we overrule Appellant's sole issue on appeal.

**DISPOSITION**

Having overruled Appellant's sole issue, we ***affirm*** the trial court's judgment.

**GREG NEELEY**
Justice

Opinion delivered March 11, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MARCH 11, 2015**

**NO. 12-13-00378-CR**

**BERNIE RAY LUCAS,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 2nd District Court

of Cherokee County, Texas (Tr.Ct.No. 16,984)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*